# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EARL GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-189 |
| | ) | |
| v. | ) | Judge McVerry |
| | ) | Magistrate Judge Bissoon |
| RICHARD GIGLIOTTI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Renewed Motion to Dismiss filed by Dr. Ulhaq (Doc. 38), and the Motion to Dismiss filed by Defendants Adamo (incorrectly identified as "C. H. Adams" in the caption) and Lawrence County Corrections (Doc. 51) be granted.

### II. REPORT

James Earl George ("George" or "Plaintiff") is a state prisoner currently incarcerated in the Butler County Prison. George alleges in his Amended Complaint that he complained of pain in his testicles while incarcerated at the Lawrence County Jail in October, 2007 (Doc. 34, Att. 2, ¶2). At that time, he was treated by Dr. Ulhaq for a urinary tract infection. Plaintiff complained again of pain in his testicles on November 5, 2007 (Id., at ¶6). Blood and urine samples were taken, but he was thereafter transferred to the Butler County Prison on November 6, 2007, when he began treating with another prison physician (Id., at ¶¶6-7). Plaintiff claims that he discovered while at the Butler County Prison that Dr. Ulhaq had prescribed psychiatric medications to him ("halodon" and "cogentin"), but failed to inform Plaintiff that he was not

receiving his "regular" medications (Id., at ¶¶ 9-11)[1]. Plaintiff had a physical confrontation with guards while at the Butler County Prison, and he apparently attributes this to a reaction he had to the medications prescribed by Dr. Ulhaq.[2]

Defendant Dr. Ulhaq moves to dismiss on the basis that the Amended Complaint fails to allege any conduct on his part that amounts to deliberate indifference to a serious medical need (Doc. 38). Plaintiff has responded to the motion (Doc. 49).

Defendant Adamo (incorrectly identified as "C. H. Adams" in the caption) is the Warden of the Lawrence County Jail. He moves to dismiss on the basis that there are no allegations in the Complaint that state a claim against him (Doc. 51). Defendant Lawrence County Corrections also moves to dismiss on the theory that liability against it can only be found if Warden Adamo is liable.

### A. Applicable Standard

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if no relief could be granted under any set of facts that could prove consistent with the allegations in the Amended Complaint. Hishon v. Spalding, 467 U.S. 69, 73 (1984); Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir.1986). As the United States Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id., 127 S.Ct. at 1974.

---

[1] Plaintiff later identifies his regular medications as Lithium and Trazodone (Doc. 49, ¶7).

[2] The remaining allegations in Plaintiff's Complaint concern actions taken and treatment offered at the Butler County Prison.

B. <u>Analysis.</u>

Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1978). In the context of a claimed denial of medical treatment, an inmate must prove two elements to establish a violation of his Eighth Amendment rights: 1) that he was suffering from a "serious" medical need; and 2) that the prison officials were "deliberately indifferent" to the serious medical need. <u>Id</u>. There is no dispute that George was suffering from a serious medical condition. Nevertheless, even where there is a serious medical condition, a prisoner also must allege facts that would permit a jury to conclude that the defendant prison officials acted with a sufficiently culpable state of mind. <u>Twombly</u>, 127 S. Ct. at 1965 ("[f]actual allegations must be enough to raise a right above the speculative level"). Generally speaking, an **intentional** refusal to provide **any** medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable. <u>Young v. Quinlan</u>, 960 F.2d 351 (3d Cir. 1992). Even where no treatment is provided, however, there must be facts alleged from which an inference may be made that the failure to provide treatment was, in fact, intentional or deliberately indifferent to an inmate's serious medical need. The Supreme Court has explicitly stated that "in the medical context, an **inadvertent** failure to provide medical care" does not rise to the level of deliberate indifference. <u>Gamble</u>, 429 U.S. at 105-106(emphasis supplied).

Plaintiff's brief in opposition makes clear that he perceives two separate wrongs allegedly committed by Dr. Ulhaq. First, he asserts that Dr. Ulhaq failed to obtain his consent to administer a "psychotic drug." Plaintiff cites to <u>Doby v. Hickerson</u>, 120 F.3d 111 (8th Cir. 1997), in which the court held that the forced administration of a drug, after the inmate refused the medication, would amount to a due process violation where the physician failed to follow prison

guidelines requiring notice and hearing before a drug could be involuntarily administered. Doby has no application in this case. Plaintiff alleges that he voluntarily took the drugs in question, albeit because he mistakenly believed he was still on his "regular" medications for his mental condition. This is not a situation where Plaintiff was denied a hearing on the forced administration of a drug. It is a situation in which, at most, he is alleging that Dr. Ulhaq was negligent in failing to inform him of the drugs that had been prescribed to him. Medical malpractice, however, does not serve as a basis for a Section 1983 claim. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Second, Plaintiff alleges that the treatment he received from Dr. Ulhaq for his urinary tract infection was not sufficient, and that he should have been treated by a urologist. Where treatment is offered, as it was in this case, the mere allegation of an opinion difference between a patient and a doctor, or even between two medical professionals, does not amount to "deliberate indifference to a serious medical need." White, 897 at 110 ("[T]here may . . . be several acceptable ways to treat an illness."); Young, 960 F.2d at 358 n.18 (superceded by statute on other grounds)(an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under section 1983). Finally, when a physician exercises professional judgment, his behavior does not violate a prisoner's constitutional rights. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Here, the allegations concerning Dr. Ulhaq's treatment of Plaintiff's complaints are nothing more than Plaintiff's disagreement with the treatment offered. The motion to dismiss should be granted.

Warden Adamo is not alleged to have taken part in the medical diagnosis that occurred at his facility in October, 2007. Nonetheless, officials may be liable under Section 1983 for the

acts of those over whom they have supervisory responsibility – in this case, Dr. Ulhaq. Supervisory liability, however, may not be premised solely upon a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988); 42 U.S.C. § 1983. Some personal involvement must be alleged. Id. Supervisory liability for Section 1983 violations can be established by evidence showing that officials: participated in violating a plaintiff's rights; directed others to violate a plaintiff's rights; knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or knew of, and tolerated, past or ongoing misbehavior. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 & n.3 (3d Cir. 1995).

Further, municipal entities, such as Lawrence County Corrections, can only be held liable if the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1977). A custom, which lacks the formal approval of a policy, can be established by evidence showing "practices . . . so permanent and well settled as to constitute 'custom or usage' with the force of law." Id. at 691.

Supervisory or municipal liability requires an underlying constitutional violation. City of Los Angeles v. Heller, 475 U.S. 769, 799 (1986). Because Plaintiff has not stated a Section 1983 claim against Dr. Ulhaq, neither Warden Adamo nor Lawrence County Corrections may be found liable as a matter of law.

Further, there are no allegations that Warden Adamo was involved in Plaintiff's care and treatment, or that Adamo ignored any type of wrongdoing on the part of Dr. Ulhaq or other prison medical personnel. Likewise, there is no attempt by Plaintiff to allege that he was harmed

by a custom, practice or policy of Lawrence County Corrections. Thus, the motion to dismiss as to Warden Adamo and Lawrence County Corrections (Doc. 51) should be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 72.1.4 B, objections to this report and recommendation shall be filed on or before March 23, 2009. Failure to timely file objections may constitute a waiver of any appellate rights.

s/Cathy Bissoon  
CATHY BISSOON  
UNITED STATES MAGISTRATE JUDGE

Date: March 4, 2009

cc:  
JAMES EARL GEORGE  
Butler County Prison  
121 Vogeley Way  
Butler, PA 16001